

FILED
Oct 21, 2019
01:40 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD OCTOBER 1, 2019, AT NASHVILLE)

| | |
|---|---|
| Sharee Clay | )   Docket No. 2015-06-0977 |
| | ) |
| v. | )   State File No. 91296-2014 |
| | ) |
| Signature Healthcare, et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Joshua D. Baker, Judge | ) |

---

### Affirmed and Certified as Final

---

The employee, a nursing assistant, was helping a patient in a chair when the patient began to fall. As she reached to catch the patient, the employee felt pain in her left shoulder and neck. Four days later, she was involved in a motor vehicle collision unrelated to her employment that resulted in pain in her leg, wrist, and elbow. The employer provided medical care but later took the position that the employee's medical conditions did not arise primarily from the work accident and that the motor vehicle accident constituted an intervening cause of the employee's conditions. Following a trial, the court found the employee suffered injuries arising primarily out of her employment and awarded temporary total disability benefits, permanent partial disability benefits, and future medical benefits. The employer has appealed. We affirm the trial court's decision and certify its compensation order as final.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Laurenn Disspayne, Nashville, Tennessee, for the employer-appellant, Signature Healthcare

Julie Reasonover, Nashville, Tennessee, for the employee-appellee, Sharee Clay

### Factual and Procedural Background

Sharee Clay ("Employee"), a forty-year-old resident of Davidson County, Tennessee, worked as a nursing assistant for Signature Healthcare ("Employer"). On

November 15, 2014, Employee was assisting a patient in a shower chair when the patient began to fall. When Employee reached to keep the patient from falling, her left arm was jerked, and she felt pain in her left shoulder and neck. The next morning, she reported the incident to Employer and was sent to the emergency room at Summit Medical Center. The record of that visit reflects that Employee "was pulling a [patient] back into a shower chair and felt a popping sensation along left shoulder and neck area. [Employee] now [complains of] left shoulder and neck pain." She was diagnosed with muscle strains and was restricted to light duty. Thereafter, Employee was provided a panel of physicians and chose Concentra.

Four days after the work accident, Employee was driving through a parking lot when she was involved in a collision with another vehicle. Employee testified her vehicle was moving between five and ten miles per hour at the time of the collision. She denied any increased symptoms in her left shoulder or neck immediately after the accident but reported having pain in her left leg, left wrist, and left elbow.

On November 24, 2014, Employee saw a nurse practitioner at Concentra complaining of shoulder injuries after catching a falling patient. She described pain in her shoulders, neck, and low back. She was diagnosed with a cervical strain, lumbar strain, and shoulder strain, and was instructed to continue following her light duty restrictions.

Employee saw providers at Concentra twice more, and her symptoms were reported to be stable and unchanged. On December 10, 2014, Employee was released from Concentra's care at maximum medical improvement with no permanent impairment and no work restrictions. Employer provided no further workers' compensation benefits, asserting that Employee's complaints were due to the car accident on November 19, 2014.

On December 19, 2014, Employee saw her primary care physician, Dr. Shawnda Hollie, for follow-up related to her car accident. She complained of ongoing pain as a result of the accident in her right arm, left elbow, and both knees. She also reported she had begun working in a hair salon but was unable to work for long periods due to pain. Dr. Hollie referred Employee to physical therapy for right shoulder and left elbow pain resulting from the car accident.

Employee began physical therapy on January 12, 2015, complaining of left shoulder and elbow pain and left knee pain that she attributed to the car accident. She also reported she had received physical therapy for left shoulder and back complaints resulting from catching the falling patient at work a few days before the car accident. At her physical therapy appointment on February 3, 2015, she complained that her left arm was hurting from working over the weekend, stating that her pain had returned since she began working at the hair salon. A left shoulder MRI performed on April 10, 2015,

2

revealed mild supraspinatus and infraspinatus tendinopathy without a partial or full-thickness tear, grossly intact glenoid labrum, and Type II acromion, "which can predispose to impingement."

Employee followed up with Dr. Hollie for complaints of left shoulder pain on April 22, 2015. She reported that she stopped physical therapy because it made her pain worse. She also reported that she "cuts hair for a living, which will worsen her [left] shoulder pain." Dr. Hollie diagnosed Employee with inflammation of the rotator cuff and referred her to an orthopedist for additional evaluation and treatment.

On June 3, 2015, Employee saw Dr. J. Wills Oglesby, an orthopedist, and reported the work incident catching the patient falling out of a chair and injuring her left shoulder and back. She reported that her back had recovered, but her left shoulder pain persisted. Employee also noted that days after she was injured at work she was involved in a car accident, though she denied that her left shoulder pain was worsened by the accident. Dr. Oglesby also noted that Employee was working as a hairstylist. He diagnosed her with impingement of the left shoulder related to the work accident and not the motor vehicle accident stating, "[i]n my opinion, this should be considered as a workers['] comp claim."

Employee continued to treat with Dr. Oglesby, attending additional sessions of physical therapy and receiving other conservative care with no improvement. On July 13, 2015, Dr. Oglesby performed surgery on Employee's left shoulder and she returned to work with restrictions on August 24, 2015. At a visit on September 9, 2015, Employee complained of burning pain in her left arm extending to her thumb and index finger. Dr. Oglesby noted that her shoulder was healing well but she was having a recurrent exacerbation of degenerative disc disease in her cervical spine. He referred her for physical therapy for her neck.

On October 21, 2015, Dr. Oglesby noted Employee was pain free in her left shoulder but was still having neck pain that was not being helped by physical therapy. An MRI of Employee's cervical spine revealed degenerative disc disease with mild impingement and multi-level osteophyte complex formation. She returned to Dr. Oglesby on February 3, 2016, with complaints of pain in her left shoulder again as well as radicular symptoms. Dr. Oglesby referred Employee to Dr. Gregory Lanford, a neurosurgeon, for evaluation and treatment of her neck injury.

Employee saw Dr. Lanford on March 15, 2016, and he noted she had undergone left shoulder arthroscopy approximately eight months prior but was still having problems with left-sided neck pain and radicular left arm pain. He observed that Employee's cervical MRI showed two-level cervical disc disease consistent with her symptoms and stated she had long since failed conservative treatment. Dr. Lanford recommended a cervical fusion, but Employee did not have the surgery at that time.

Employee returned to Dr. Oglesby on July 12, 2016, with continued cervical complaints, including radicular pain in her left arm. She reported that epidurals and physical therapy had not helped, and he referred her back to Dr. Lanford for additional treatment. Employee saw Dr. Lanford on July 26, 2016 with ongoing complaints of neck and left arm pain. Dr. Lanford observed that Employee had been scheduled for surgery but cancelled due to her receiving treatment for an unrelated medical condition. He recommended surgery again, but the surgery was not performed because Employee was unable to take time off from work to recover.

On March 10, 2017, Dr. Oglesby indicated that Employee's cervical condition was pre-existing and unrelated to her employment. On April 5, 2017, he issued a C-32 Standard Form Medical Report indicating Employee had injured her left shoulder catching a patient and that her employment with Employer was primarily responsible for her injury and her need for treatment. Employee's attorney sent letters to Dr. Oglesby and Dr. Lanford inquiring as to whether her shoulder and neck conditions were causally related to the employment. Dr. Oglesby responded in the affirmative, indicating his belief that Employee's shoulder injury arose primarily out of the employment. Dr. Lanford opined that, with regard to the neck injury, Employee's work accident was the primary cause of an aggravation of a pre-existing condition.

On August 24, 2017, Employee was examined by Dr. Sean Kaminsky at Employer's request. Dr. Kaminsky noted that Employee reported an injury to her left shoulder as a result of pulling on a patient while working as a nursing assistant. He concluded that he could not state that Employee's left shoulder or neck problems were caused by her employment.

Employee was also examined by Dr. Robert Weiss at Employer's request, who opined that Employee's neck condition was degenerative in nature and was not caused by either her employment with Employer or the subsequent car accident. He stated that her condition was consistent with her age and was not linked to anything specific. He further opined that, while her symptoms may have begun after the work incident, losing weight and a conditioning program were the best treatment for her. He did not believe surgery was reasonable or necessary based on her 2015 MRI results.

Dr. Weiss and Dr. Kaminsky gave deposition testimony consistent with their written reports. Both physicians agreed that there was no reason to question Employee's report that her symptoms began with the incident at work, but they also stated that her problems were pre-existing and degenerative in nature and that her employment was not primarily responsible for her problems.

Dr. Lanford also provided deposition testimony in which he acknowledged that, prior to Employee's November 2014 incident at work, she had underlying problems in her neck. However, he stated those problems became "clinically real" on November 15,

4

2014, when she caught the patient falling out of the chair. He testified that she suffered an aggravation of a pre-existing condition that arose primarily out of her employment and that the course of treatment he recommended was made reasonable and necessary by the work accident.

The parties first took Dr. Oglesby's deposition in April 2017, at which time he opined that Employee's left shoulder injury was primarily caused by the incident at work. He further stated that the car accident a few days afterward did not worsen her shoulder condition. Although he had previously indicated he did not believe Employee's neck complaints were related to the work accident, he testified that he would defer to Dr. Lanford's opinion in that regard. However, on cross-examination, he acknowledged that he did not have some of Employee's medical records from other providers and that information contained in those records could change his opinion. As a result, Employer provided him with additional records and, on December 17, 2017, Dr. Oglesby sent a letter to Employer's counsel stating that

> [a]t the conclusion of this extensive review of records, it clouds the history that the patient gave to me. I am no longer able to say with a reasonable degree of medical certainty that the work related accident, wherein she caught the patient who was falling, was the cause of her shoulder injury that I treated surgically. After the review of prior medical records, it is my opinion now that the shoulder injury was not a direct consequence of the work related injury of November 2014.

The parties took Dr. Oglesby's deposition a second time in April 2018. At that time, Employee's counsel presented Dr. Oglesby with additional documentation concerning Employee's injury at work, particularly with regard to her reporting the injury and her initial complaints. In response, Dr. Oglesby stated that

> the records that I reviewed separately that clouded my judgment about causation don't have nearly as much weight. I've always felt that the first report of injury and that the employer's first report gets you closer to the truth about causation than records that come up later. And certainly the ones from hospitals and the physical therapists sort of bring to mind that old game of gossip where you whisper something to the kid next to you and by the time it gets back to you, it's something totally different. But the first report of injury is very clear cut. And with that additional information, unless there is more information out there that I don't have, then I would have to go back to my original statement of believing my patient, who told me that she injured her shoulder and neck when she tried to catch a patient who was slipping out of a chair.

5

On cross-examination, however, Employer again questioned whether Dr. Oglesby had been provided a full and complete medical and employment history of Employee. When asked whether having a "good understanding of her job" and "an accurate medical history and work history" could have affected his opinion, Dr. Oglesby stated, "[w]ell, lots of things have an impact on my statement about causation." He went on to state:

> And, you know, I feel somewhat mystified. I would like to applaud both of you for being remarkably prepared. I also feel ambushed by both of you and I'm not really sure what I can say. I have a report of injury reported to the employer, reported to the state. You know, I've always thought that those immediate records hold a lot of validity.
>
> . . . .
>
> And, you know, I have to come down to one of two things, either the request by the patient to call this work-related is a fabrication on her part and she's a liar. I mean, she certainly omitted telling me a lot about the treatments she had undergone during those [sic] winter and spring of 2015. I didn't know about any of the stuff she was doing. I didn't ask, but all she told me was that she was taking Aleve. And so that casts doubt as to her veracity.

Dr. Oglesby also stated that he "recognize[d] a whole lot of those notes just don't matter. Poor historians, poor recording." Ultimately, he requested additional time to review the documentation and provide his opinion. Dr. Oglesby offered to reconvene the deposition or provide his opinion in a letter. Both parties agreed that a letter was acceptable. Dr. Oglesby provided his opinion in a letter, as promised, but Employee objected to the admissibility of the letter. The trial court excluded the letter both in response to a motion and at trial.

With leave of the trial court, and over Employer's objection, Employee was evaluated by Dr. David West, who testified that Employee had a "work-related injury . . . to the left shoulder with a direct injury to the labrum causing, basically an aggravation to that labral area of her shoulder." He also opined that the work accident caused "an aggravation to her underlying condition in her cervical spine, C4, C5 and C6, which become [sic] symptomatic and aggravated after the work-related accident." He further stated that the surgery resulting from her complaints was "directly related to that initial injury."

Following a trial, the court concluded Employee had established she suffered a left shoulder and neck injury arising primarily out of her employment and ordered Employer to pay temporary disability benefits, permanent partial disability benefits, and ongoing

medical treatment with Dr. Oglesby and Dr. Lanford for her left shoulder and neck, respectively. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2018). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2018).

## Analysis

Employer raises a number of issues for our review: (1) whether the trial court erred in excluding Dr. Oglesby's written causation opinion; (2) whether the trial court erred in granting Employee's motion for a continuance to allow her to obtain a new medical expert; (3) whether the trial court erred in finding Employee suffered a compensable injury; (4) whether the evidence supports a finding that Employee suffered from pre-existing conditions that were not aggravated by the work injury; (5) whether the trial court erred in assessing the weight of the medical proof; (6) whether Employee's injuries were caused by an intervening event, breaking the chain of causation and relieving Employer of any liability; and (7) whether the trial court erred in awarding permanent partial disability benefits. We combine and discuss these issues as set out below.

## A.

With respect to Employer's arguments that the trial court erred in granting Employee's motion for a continuance to allow her to obtain a new medical expert and whether the trial court erred in admitting testimony regarding her permanent partial disability, we note that the trial court addressed these issues in response to pre-trial motions. Specifically, the court issued an October 22, 2018 order granting Employee's

7

motion to extend discovery deadlines in order to obtain additional medical proof. The court also issued an order on January 19, 2019, denying Employer's motion to exclude expert medical testimony regarding the degree of Employee's permanent impairment. Neither order was appealed, and neither issue was raised at trial. Accordingly, both issues have been waived.

**B.**

Next, we turn to whether the trial court erred in excluding Dr. Oglesby's written opinion. On February 13, 2019, Employer filed a "Motion to Enforce Stipulation to Exhibit Medical Record," arguing that at Dr. Oglesby's second deposition, the parties had agreed to "accept and exhibit Dr. Oglesby's causation opinion to his prior deposition." The trial court denied the motion on February 22, 2019, finding there was no stipulation regarding the admissibility of the opinion and that, absent a stipulation, the report did not satisfy any exceptions to the prohibition against hearsay. Moreover, the court found Employer had ample time to take Dr. Oglesby's deposition. That order was not appealed.

At trial, Employer again argued that Dr. Oglesby's causation letter should be admitted into evidence, asserting that Dr. Oglesby's refusal to attend another deposition and his failure to appear in court pursuant to a subpoena established he was an unavailable witness. The trial court declined to revisit its decision to exclude Dr. Oglesby's written opinion, although it allowed Employer to submit the opinion in an offer of proof.

Issues regarding the admissibility of expert testimony are left to the discretion of the trial court and will not be overturned unless the trial court abused its discretion. *Bogle v. Nighthawk Radiology Servs., LLC*, No. M2014-01933-COA-R3-CV, 2016 Tenn. App. LEXIS 244, at *20 (Tenn. Ct. App. Apr. 6, 2016). An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). Under this standard, "the appellate court should presume the decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 105-06.

Here, the trial court concluded that Dr. Oglesby's written causation opinion did not qualify as an exception to the prohibition against hearsay and that there was no stipulation as to the admissibility of the opinion. Employer has not demonstrated that the trial court abused its discretion. While asserting that exclusion of the opinion was prejudicial to its case, it did not establish that the court employed an incorrect legal standard, reached an illogical result, erroneously assessed the evidence, or relied on reasoning that caused an injustice. Furthermore, as explained below, even if the trial court erred in excluding Dr. Oglesby's opinion, any such error was harmless.

## C.

The remainder of Employer's issues may be combined and restated as whether the trial court erred in finding Employee suffered a compensable injury and/or a compensable aggravation of one or more pre-existing conditions.

At a compensation hearing where the parties have arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is entitled to the requested benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6). This burden of proof requires the employee to establish that the injury for which benefits are sought is a compensable injury as contemplated by the statute. To be compensable, an injury or aggravation must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2018). In order to establish that an injury arises primarily out of the employment, the employee must show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).

It is also well-established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). Thus, when medical opinions conflict, as in this case, "the trial judge must obviously choose which view to believe. In doing so, [the judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

It is undisputed that Employee was assisting a patient who was falling out of a chair when she suffered pain in her left shoulder and neck. She reported the incident to Employer the following day and was seen at an emergency room for complaints of left shoulder and neck pain. It is also undisputed that she was in a low speed motor vehicle accident approximately four days after her work injury and that she reported sustaining injuries in that accident. Moreover, she voluntarily quit her employment with Employer and went to work as a hairdresser. Medical records reflect that her activities as a hairdresser aggravated her symptoms. Thus, we must determine whether the preponderance of the evidence supports a conclusion that her left shoulder and/or neck

9

complaints arose primarily out of her employment. The trial court concluded that the preponderance of the evidence established that both her left shoulder and neck injuries were compensable. We agree.

In evaluating the medical proof, the trial court accepted the opinions of Dr. West and Dr. Lanford over those of Dr. Oglesby, Dr. Kaminsky, and Dr. Weiss. The court gave Dr. Lanford's causation opinion concerning Employee's neck injury significant weight, noting that he treated Employee and was a board-certified neurosurgeon. The court discounted Dr. Kaminsky's opinion and Dr. Weiss's opinion based upon Employee's testimony regarding how her symptoms began. Both physicians opined that her condition was degenerative in nature and not causally related to her employment. However, there is no dispute that Employee's condition was previously asymptomatic and became symptomatic on November 15, 2014. When considering the history reported by Employee in light of the medical proof, the evidence does not preponderate against the trial court's conclusion that Employee suffered compensable injuries and/or aggravations of pre-existing conditions.

Addressing Dr. Oglesby's opinion, the trial court noted that, as the physician who treated Employee's shoulder condition, his opinion regarding causation could be highly relevant and of significant weight. However, the court also noted that, after reading his depositions, it was impossible to discern what his opinion regarding causation actually was. He vacillated between accepting Employee's history and believing her condition to be work-related and doubting Employee's truthfulness and believing her condition was not work-related. In his first deposition, he linked her shoulder injury to her employment. When provided additional records, he gave the opinion that her condition was not primarily caused by her employment. In his second deposition, he again reversed course and opined her condition was related to her employment. In a letter provided after that deposition was terminated, he gave an opinion unfavorable to Employee. We agree with the trial court that relying on Dr. Oglesby's testimony or various causation opinions is problematic. Moreover, as the trial court noted, had his written opinion been admitted into evidence, the court would have had little confidence that it was actually his final say on the matter. Thus, we conclude the trial court did not abuse its discretion in discounting Dr. Oglesby's opinions.

With respect to whether Employee's car accident was a subsequent intervening event that would break the chain of causation and relieve Employer of its obligation to provide benefits, we conclude there is insufficient proof to support a finding that either the car accident or Employee's work as a hairstylist advanced or aggravated her medical conditions. Although the medical records indicate Employee's work as a stylist may have increased her symptoms, there is no opinion in the record, expert or otherwise, that her injuries arose primarily out of either the motor vehicle accident or her work as a stylist. Rather, as the trial court concluded, the preponderance of the evidence supports

the conclusion that Employee's left shoulder and neck injuries arose primarily out of and in the course and scope of her work with Employer.

**D.**

Finally, Employee asks that we find this appeal frivolous. As we have noted in prior cases, a frivolous appeal is one that is devoid of merit or brought solely for delay. *Yarbrough v. Protective Servs. Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *11 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016). We do not find Employer's appeal to be frivolous and therefore decline to award attorney's fees. *See* Tenn. Comp. R. & Regs. 0800-02-22-.04(6) (2018).

**Conclusion**

The trial court's decision is affirmed and its order certified as final. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD
### (HEARD OCTOBER 1, 2019, AT NASHVILLE)

| | | |
|---|---|---|
| Sharee Clay | ) | Docket No. 2015-06-0977 |
| | ) | |
| v. | ) | State File No. 91296-2014 |
| | ) | |
| Signature Healthcare, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Joshua D. Baker, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 21st day of October, 2019.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Julie Reasonover | | | | X | julie@reasonoverlaw.com |
| Laurenn Disspayne | | | | X | ldisspayne@manierherod.com |
| Joshua D. Baker, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: WCAppeals.Clerk@tn.gov